1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>CONSUMER ADVOCATES GROUP EXPERTS, LLC, a California limited liability company, also d.b.a. Consumer Advocates Group;<br>PARAMOUNT ASSET MANAGEMENT CORP., a California Corporation, also d.b.a. National Financial Rescue Corp., National Financial Rescue Group, and American Forensic Loan Auditors;<br>ADVOCATES FOR CONSUMER AFFAIRS EXPERT, LLC, a California Limited Liability Company; and<br>RYAN ZIMMERMAN,<br><br>Defendants. | Case No.  CV12-04736 DDP(CWx)<br><br>PRELIMINARY INJUNCTION WITH ASSET FREEZE, APPOINTMENT OF TEMPORARY RECEIVER AND OTHER EQUITABLE RELIEF<br><br>Date:   June 7, 2012<br>Time:  10:30 a.m.<br>Place:  Courtroom 3, the<br>         Honorable Judge<br>         Dean D. Pregerson |

Plaintiff, the Federal Trade Commission ("FTC"), pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the 2009 Omnibus Appropriations Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11, 2009) ("Omnibus Act"), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Public Law 111-24, Section 511, 123 Stat. 1734, 1763-64 (May 22, 2009) ("Credit Card Act"), and amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203, Section 1097, 124 Stat. 1376, 2102-03 (July 21, 2010) ("Dodd-Frank Act"), filed its Complaint for Permanent Injunction and Other Equitable Relief, and an *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of Temporary Receiver, Expedited Discovery, and Other Equitable Relief, and Order to Show Cause Why Preliminary Injunction Should Not Issue, and Supporting Memorandum ("Memorandum of Points and Authorities in Support of Plaintiff's *Ex Parte* TRO"), pursuant to Rule 65 of the Federal Rules of Civil Procedure.

On May 30, 2012, this Court granted Plaintiff's *Ex Parte* Application for a Temporary Restraining Order and entered a Temporary Restraining Order ("TRO") with an Order to Show Cause Why a Preliminary Injunction Should Not Issue against Defendants Consumer Advocates Group Experts, LLC ("CAG"), Paramount Asset Management Corporation ("Paramount"), Advocates for Consumer Affairs Expert, LLC ("ACA"), and Ryan Zimmerman (hereinafter referred to collectively as "Defendants").  All Defendants were served with the Summons, Complaint, TRO, and other related papers filed in this action on June 1, 2012.

## DISPOSITION

Having duly considered the parties' pleadings, papers, and argument, the

Court hereby **GRANTS** the Preliminary Injunction against Defendants CAG, Paramount, ACA, and Ryan Zimmerman.

## FINDINGS OF FACT

1.      This Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over the Defendants.

2.      Venue lies properly with this Court.

3.      There is good cause to believe that Defendants **CONSUMER ADVOCATES GROUP EXPERTS, LLC**, also d.b.a. Consumer Advocates Group; **PARAMOUNT ASSET MANAGEMENT CORP.**, also d.b.a. National Financial Rescue Corp., National Financial Rescue Group, and American Forensic Loan Auditors; **ADVOCATES FOR CONSUMER AFFAIRS EXPERT, LLC**; and **RYAN ZIMMERMAN** have engaged in, and are likely to engage in, acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Mortgage Assistance Relief Services Rule, 16 C.F.R. Part 322 (effective December 29, 2010, except for Section 322.5, which became effective on January 31, 2011), recodified as Mortgage Assistance Relief Services (Regulation O), 12 C.F.R. Part 1015 ("Regulation O") (effective December 30, 2011) ("MARS Rule"), and that the FTC is therefore likely to prevail on the merits of this action.

4.      There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers in the form of monetary restitution and disgorgement of ill-gotten gains will occur from the transfer, dissipation, or concealment by Defendants of their assets or business records unless Defendants are restrained and enjoined by Order of this Court.

5.      Good cause exists for continuing the appointment of the Temporary Receiver over Corporate Defendants and the asset freeze imposed pursuant to the

TRO in this case; permitting the FTC access to Defendants' business premises at the discretion of the Temporary Receiver; and the other equitable relief ordered herein.

6.      Weighing the equities and considering the FTC's likelihood of ultimate success, this Order is in the public interest.

7.      No security is required of any agency of the United States for issuance of a preliminary injunction.  Fed. R. Civ. P. 65.

## ORDER

## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

A.      "Asset" or "Assets" means any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property of any Defendant, or held for the benefit of any Defendant, wherever located, whether in the United States or abroad, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares of stock, commodities, futures, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), cash, and trusts, including but not limited to any trust held for the benefit of any Defendant, the Individual Defendant's minor children, if any, or the Individual Defendant's spouse, if any, and shall include both existing assets and assets acquired after the date of entry of this Order.

B.      "Defendants" means the Individual Defendant and all of the Corporate Defendants, individually, collectively, or in any combination, and each of them by whatever names each might be known.

1.      "Corporate Defendants" means Consumer Advocates Group Experts, LLC, Paramount Asset Management Corp., and Advocates for

Consumer Affairs Expert, LLC, and their successors, assigns, affiliates, or subsidiaries, and each of them by whatever names each might be known.

2.      "Individual Defendant" means Ryan Zimmerman and any other names by which he might be known.

C.      "Document" and "Electronically Stored Information" are synonymous in meaning and equal in scope to the usage of the terms in Rule 34(a) of the Federal Rules of Civil Procedure and include but are not limited to:

1.      The original or a true copy of any written, typed, printed, electronically stored, transcribed, taped, recorded, filmed, punched, or graphic matter or other data compilations of any kind, including, but not limited to, letters, email or other correspondence, messages, memoranda, interoffice communications, notes, reports, summaries, manuals, magnetic tapes or discs, tabulations, books, records, checks, invoices, work papers, journals, ledgers, statements, returns, reports, schedules, or files; and

2.      Any electronically stored information stored on any Blackberrys, flash drives, personal digital assistants ("PDAs"), desktop personal computer and workstations, laptops, notebooks, and other portable computers, or other electronic storage media, whether assigned to individuals or in pools of computers available for shared use, or personally owned but used for work-related purposes; backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether stored onsite with the computer used to generate them, stored offsite in another company facility, or stored, hosted, or otherwise maintained offsite by a third-party; and computers and related offline storage used by Defendants or Defendants' participating associates,

which may include persons who are not employees of the company or who do not work on company premises.

D.     "Electronic Data Host" means any person or entity that stores, hosts, or otherwise maintains electronically stored information.

E.     "Financial Institution" means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

F.     "Material fact" means any fact that is likely to affect a person's choice of, or conduct regarding, goods or services.

G.     "Mortgage assistance relief product or service" means any product, service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following:

1.     stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession;

2.     negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees;

3.     obtaining any forbearance or modification in the timing of payments from any dwelling loan holder or servicer on any dwelling loan;

4.     negotiating, obtaining, or arranging any extension of the period of time within which the consumer may (i) cure his or her default on a dwelling loan,

(ii) reinstate his or her dwelling loan, (iii) redeem a dwelling, or (iv) exercise any right to reinstate a dwelling loan or redeem a dwelling;

5.      obtaining any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling; or

6.      negotiating, obtaining, or arranging (i) a short sale of a dwelling, (ii) a deed in lieu of foreclosure, (iii) or any other disposition of a dwelling loan other than a sale to a third party that is not the dwelling loan holder.

The foregoing shall include any manner of claimed assistance, including, but not limited to, auditing or examining a consumer's mortgage or home loan application and offering to provide or providing legal services.

H.      "Person" means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

I.      "Receivership Assets" means and includes any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property of any Receivership Defendant, or held for the benefit of, or in constructive trust for, any Receivership Defendant, wherever located, whether in the United States or abroad, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares of stock, commodities, futures, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), cash, and trusts, and shall include both existing assets and assets acquired after the date of entry of this Order. "Receivership Assets" also expressly means and includes any asset of the Receivership Defendants, as defined above, held by a third party, whether a party to the above-referenced action or not.

J.     "Receivership Estate" means and includes the estate of the Receivership Defendants created by this Order, and as may be modified or expanded by subsequent orders of this Court, including, but not limited to, all Receivership Assets as defined herein, regardless of whether such Receivership Assets are held by any Defendant or Individual Defendant, or third party not presently a party to the above-referenced action.

K.     "Receivership Defendants" means Consumer Advocates Group Experts, LLC, Paramount Asset Management Corp., and Advocates for Consumer Affairs Expert, LLC, and their successors, assigns, affiliates, or subsidiaries, and each of them by whatever names each might be known, provided that the Temporary Receiver has reason to believe they are owned or controlled in whole or in part by any of the Defendants.

L.     The words "and" and "or" shall be understood to have both conjunctive and disjunctive meanings as necessary to make the applicable phrase or sentence inclusive rather than exclusive.

# I.

## PROHIBITED REPRESENTATIONS

**IT IS THEREFORE ORDERED** that Defendants and their officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief product or service, are hereby restrained and enjoined

from falsely representing, or from assisting others who are falsely representing, expressly or by implication, any of the following:

    A.   that any Defendant or any other person:

        1.   generally will obtain for consumers mortgage loan modifications that will make consumers' payments substantially more affordable,

        2.   as a result of a loan audit, generally will obtain for consumers mortgage loan modifications that will make consumers' payments substantially more affordable;

        3.   will give refunds to consumers if the Defendant fails to obtain a mortgage loan modification;

    B.   The degree of success that any Defendant or any other person has had in performing any mortgage assistance relief service;

    C.   The nature of any Defendant's or any other person's relationship with any mortgage loan holder or servicer, or other secured or unsecured lender;

    D.   The amount of time it will take or is likely to take to obtain or arrange a renegotiation, settlement, modification, or other alteration of the terms of any secured or unsecured debt, including but not limited to the modification of any term of a consumer's home loan, deed of trust, or mortgage, including any recapitalization or reinstatement agreement;

    E.   The consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan;

    F.   The amount of money or percentage of the debt amount that a consumer may save by using the mortgage assistance relief service; and

G.      The refund policy of any Defendant or any other person, including but not limited to the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer.

## II.

## REPRESENTATIONS PROHIBITED AND DISCLOSURES REQUIRED BY MARS RULE

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any good or service, are hereby restrained and enjoined from engaging in, or assisting others in engaging in, the following conduct:

A.      Representing, expressly or by implication, that a consumer cannot or should not contact or communicate with his or her lender or servicer, in violation of 12 C.F.R. § 1015.3(a);

B.      Making any representation, expressly or by implication, about the benefits, performance, or efficacy of any mortgage assistance relief service unless, at the time such representation is made, the Defendants possess and/or rely upon competent and reliable evidence that substantiates that the representation is true, including, but not limited to, representations regarding:

1.      The amount of time it will take the mortgage assistance relief service provider to accomplish any represented service or result; and

2.      The amount of money or the percentage of the debt amount that a consumer may save by using the mortgage assistance relief service, in violation of 12 C.F.R. § 1015.3(c);

C.      Failing to make the following disclosure in all general and consumer-specific commercial communications: "[Name of Company] is not associated with the government, and our service is not approved by the government or your lender," in violation of 12 C.F.R. § 1015.4(a)(1) & 1015.4(b)(2);

D.      Failing to make the following disclosure in all general and consumer-specific commercial communications: "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of 12 C.F.R. § 1015.4(a)(2) & 1015.4(b)(3);

E.      Failing to make the following disclosure in all consumer-specific commercial communications: "You may stop doing business with us at any time.  You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer].  If you reject the offer, you do not have to pay us.  If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services."  For the purposes of this section, the amount "you will have to pay" shall consist of the total amount the consumer must pay to purchase, receive, and use all of the mortgage assistance relief services that are the subject of the

sales offer, including but not limited to, all fees and charges, in violation of 12 C.F.R. § 1015.4(b)(1);

F.     Failing, in all general commercial communications, consumer-specific commercial communications, and other communications in cases where any Defendant or person has represented, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, that the consumer should temporarily or permanently discontinue payments, in whole or in part, on a dwelling loan, to place clearly and prominently, and in close proximity to any such representation the following disclosure: "If you stop paying your mortgage, you could lose your home and damage your credit rating," in violation of 12 C.F.R. § 1015.4(c).

## III.

## PROHIBITION ON COLLECTION OF ADVANCE FEES

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, are hereby restrained and enjoined from asking for or receiving payment before consumers have executed a written agreement between the consumer and the loan holder or servicer that incorporates the offer obtained by Defendants.

**IV.**

**PRESERVATION OF RECORDS AND TANGIBLE THINGS**

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, are hereby enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents or records that relate to the business practices, or business or personal finances, of Defendants or other entity directly or indirectly under the control of Defendants.

**V.**

**DISABLEMENT OF WEBSITES**

**IT IS FURTHER ORDERED** that, immediately upon service of the Order upon them, (1) any person hosting any Internet website for, or on behalf of, any Defendant, and (2) Defendants and their officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, shall:

    A.    Immediately do whatever is necessary to ensure that any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, including but not limited to www.consumer-advocates-group.com and www.aca-portal.com, and containing statements or

representations prohibited by Sections I and II of this Order cannot be accessed by the public;

B.   Prevent the destruction or erasure of any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, by preserving such website in the format in which it is maintained currently; and

C.   Immediately notify in writing counsel for the FTC of any other Internet website operated or controlled by any Defendant not listed in Subsections V.A or B above.

## VI.

## SUSPENSION OF INTERNET DOMAIN NAME REGISTRATIONS

**IT IS FURTHER ORDERED** that any domain name registrar shall suspend the registration of any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, and containing statements or representations prohibited by Sections I and II of this Order, including, but not limited to www.consumer-advocates-group.com and www.aca-portal.com, and provide immediate notice to counsel for the FTC, the Temporary Receiver, and the Temporary Receiver's attorneys of any other Internet domain names registered or controlled by any Defendants.

## VII.

## ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants, employees, and attorneys, and all persons or entities directly or indirectly

under the control of any of them, including any financial institution, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile, email, or otherwise, are hereby restrained and enjoined from directly or indirectly:

    A.    Selling, liquidating, assigning, transferring, converting, loaning, hypothecating, disbursing, gifting, conveying, encumbering, pledging, concealing, dissipating, spending, withdrawing, or otherwise disposing of any funds, real or personal property, or other assets or any interest therein, wherever located, including any assets outside the territorial United States, that are:

        1.    in the actual or constructive possession of any Defendant;

        2.    owned or controlled by, or held, in whole or in part for the benefit of, or subject to access by, or belonging to, any Defendant; or in the actual or constructive possession of, or owned or controlled by, or subject to access by, or belong to, any corporation, partnership, trust or other entity directly or indirectly owned, managed or under the control of any Defendant;

    B.    Opening, or causing to be opened, any safe deposit boxes titled in the name any Defendant, or subject to access by any Defendant;

    C.    Incurring charges on any credit card, stored value card, debit card or charge card issued in the name, singly or jointly, of any Defendant or any other entity directly or indirectly owned, managed or controlled by any Defendant;

    D.    Obtaining a personal or secured loan; or

E.  Cashing any checks from consumers, clients, or customers of any Defendant.

F.  The funds, property, and assets affected by this Section shall include: (a) all assets of each Defendant as of the time this Order is entered, and (b) those assets obtained or received after entry of this Order that are derived from the actions alleged in Plaintiff's Complaint. This Section does not prohibit transfers to the Temporary Receiver, as specifically required in Section XVII (Delivery of Receivership Property), nor does it prohibit the Repatriation of Foreign Assets, as specifically required in Section XI of this Order.

## VIII.

## RETENTION OF ASSETS AND DOCUMENTS BY THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution, business entity, electronic data host, or person served with a copy of this Order that holds, controls, or maintains custody of any account, document, electronically stored information, or asset of, on behalf of, in the name of, for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant or other party subject to Section VII above, or has held, controlled, or maintained any such account, document, electronically stored information, or asset at any time since January 1, 2009, shall:

A.  Hold, preserve, and retain within such entity's or person's control, and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of such account, document, electronically stored information, or asset held by or under

such entity's or person's control, except as directed by further order of the Court or as directed in writing by the Temporary Receiver regarding accounts, documents, or assets held in the name of or for the benefit of any Receivership Defendant;

B.   Provide the Temporary Receiver, the Temporary Receiver's agents, the FTC, and the FTC's agents immediate access to any data stored, hosted, or otherwise maintained by an electronic data host on behalf of Defendants for forensic imaging;

C.   Deny access to any safe deposit boxes that are either titled in the name of, individually or jointly, or subject to access by, any Defendant or other party subject to Section VII above;

D.   Provide to counsel for the FTC and the Temporary Receiver, within one (1) business day, a sworn statement setting forth:

1.   the identification of each account or asset titled in the name of, individually or jointly, or held on behalf of or for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant or other party subject to Section VII above, whether in whole or in part; the balance of each such account, or a description of the nature and value of such asset, as of the close of business on the day on which this Order is served;

2.   the identification of any safe deposit box that is either titled in the name of, individually or jointly, or is otherwise subject to access or control by, any Defendant or other party subject to Section VII above, whether in whole or in part; and

3.      if the account, safe deposit box, or other asset has been closed or removed, the date closed or removed, the balance on said date, and the name or the person or entity to whom such account or other asset was remitted;

E.      Provide to counsel for the FTC and the Temporary Receiver, within three (3) business days after being served with a request, copies of all documents pertaining to such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; provided that such institution or custodian may charge a reasonable fee; and

F.      Cooperate with all reasonable requests of the Temporary Receiver relating to this Order's implementation, without further order of the Court.

G.      The accounts subject to this provision include: (a) all assets of each Defendant deposited as of the time this Order is entered, and (b) those assets deposited after entry of this Order that are derived from the actions alleged in Plaintiff's Complaint.  This Section does not prohibit transfers to the Temporary Receiver, as specifically required in Section XVII (Delivery of Receivership Property), nor does it prohibit the Repatriation of Foreign Assets, as specifically required in Section XI of this Order.

H.      The FTC is granted leave, pursuant to Fed. R. Civ. P. 45, to subpoena documents immediately from any financial or brokerage institution,

business entity, electronic data host, or person served with a copy of this Order that holds, controls, or maintains custody of any account, document, electronically stored information, or asset of, on behalf of, in the name of, for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant or other party subject to Section VII above, or has held, controlled, or maintained any such account, document, electronically stored information, or asset at any time since January 1, 2009, and such financial or brokerage institution, business entity, electronic data host or person shall respond to such subpoena within three (3) business days after service.

## IX.

### FINANCIAL STATEMENTS AND ACCOUNTING

**IT IS FURTHER ORDERED** that each Defendant, within three (3) business days of service of this Order, shall prepare and deliver to counsel for the FTC and the Temporary Receiver:

A.   For the Individual Defendant, a completed financial statement accurate as of the date of service of this Order upon such Defendant on the form of Attachment A to this Order captioned "Financial Statement of Individual Defendant."

B.   For each Corporate Defendant, a completed financial statement accurate as of the date of service of this Order upon such Defendant (unless otherwise agreed upon with FTC counsel) in the form of Attachment B to this Order captioned "Financial Statement of Corporate Defendant."

C.     Defendants shall provide a list of all officers and directors of each
       Corporate Defendant and all other individuals or entities with authority
       to direct the operations of each Corporate Defendant or withdraw
       money from the account of each Corporate Defendant.

## X.

## CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that pursuant to Section 604(1) of the Fair
Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may
furnish to the FTC a consumer report concerning any Defendant.

## XI.

## REPATRIATION OF FOREIGN ASSETS

**IT IS FURTHER ORDERED** that, within five (5) business days following
the service of this Order, each Defendant shall:

A.     Provide counsel for the FTC and the Temporary Receiver with a full
       accounting of all assets, accounts, funds, and documents outside of the
       territory of the United States that are held either: (1) by Defendants;
       (2) for their benefit; (3) in trust by or for them, individually or jointly;
       or (4) under their direct or indirect control, individually or jointly;

B.     Transfer to the territory of the United States all assets, accounts, funds,
       and documents in foreign countries held either: (1) by Defendants;
       (2) for their benefit; (3) in trust by or for them, individually or jointly;
       or (4) under their direct or indirect control, individually or jointly;

C.     All repatriated assets, accounts, funds, and documents are subject to
       Section VII of this Order; and

D.      Provide the FTC, the Temporary Receiver, and the Temporary Receiver's attorneys access to all records of accounts or assets of the Corporate Defendants and Individual Defendants held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to this Order as Attachment C.

## XII.

## NONINTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants are hereby restrained and enjoined from taking any action, directly or indirectly, that may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Section XI of this Order, including, but not limited to:

A.      Sending any statement, letter, fax, email or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all assets have been fully repatriated pursuant to Section XI of this Order; or

B.      Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all assets have been fully repatriated pursuant to Section XI of this Order.

# XIII.

## CONTINUATION OF APPOINTMENT OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that Michael A. Grassmueck is appointed to continue as Temporary Receiver for the business activities of Receivership Defendants with the full power of an equity receiver.  The Temporary Receiver shall be an agent of this Court and solely an agent of this Court in acting as Temporary Receiver under this Order.  The Temporary Receiver shall be accountable directly to this Court.  The Temporary Receiver shall comply with all laws and Local Rules of this Court governing receivers, including but not limited to Local Rules 66-1 through 66-5.1 and Local Rule 66-8.

# XIV.

## DUTIES AND AUTHORITY OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that the Temporary Receiver is directed and authorized to accomplish the following:

A.   Assume full control of the Receivership Defendants by removing, as the Temporary Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Receivership Defendants, including any named Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

B.   Take exclusive custody, control, and possession of all Receivership Assets, documents, and electronically stored information of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated.  The Temporary Receiver shall have full power to divert mail and to sue for, collect, receive, take into

possession, hold, and manage all Receivership Assets and documents of the Receivership Defendants and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants.  *Provided*, *however*, that the Temporary Receiver shall not attempt to collect or receive any amount from a consumer if the Temporary Receiver believes the consumer was a victim of the unlawful conduct alleged in the complaint in this matter;

C.   Take all steps necessary to secure the business premises of the Receivership Defendants.  Such steps may include, but are not limited to, the following, as the Temporary Receiver deems necessary or advisable:

1.   serving and filing this Order;

2.   completing a written inventory of all Receivership Assets;

3.   obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, Social Security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent, and all computer hardware and software passwords;

4.   videotaping and/or photographing all portions of the location;

5.   securing the location by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at that location;

6.    requiring all employees, independent contractors, and consultants of the Receivership Defendants to complete a Questionnaire submitted by the Temporary Receiver; and

7.    requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Temporary Receiver with proof of identification, or to demonstrate to the satisfaction of the Temporary Receiver that such persons are not removing from the premises documents or assets of the Receivership Defendants.

D.    Conserve, hold, and manage all Receivership Assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers or to creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the assets and preventing transfer, withdrawal, or misapplication of assets;

E.    Liquidate any and all securities or commodities owned by or for the benefit of the Receivership Defendants as the Temporary Receiver deems to be advisable or necessary;

F.    Enter into contracts and purchase insurance as the Temporary Receiver deems to be advisable or necessary;

G.    Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

H.    Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the

Temporary Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

I.   Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Temporary Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

J.   Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Temporary Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Temporary Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

K.   Determine and implement measures to ensure that the Receivership Defendants comply with, and prevent violations of, this Order and all other applicable laws, including, but not limited to, revising sales materials and implementing monitoring procedures;

L.   Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Temporary Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendants, or that the Temporary Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

M.  Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Temporary Receiver in his role as Temporary Receiver, or against the Receivership Defendants, that the Temporary Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants or that the Temporary Receiver deems necessary and advisable to carry out the Temporary Receiver's mandate under this Order;

N.  Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Temporary Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; *provided*, *however*, that the continuation and conduct of the business shall be conditioned upon the Temporary Receiver's good faith determination that the businesses can be lawfully operated at a profit using the assets of the receivership estate;

O.  Take depositions and issue subpoenas to obtain documents and records pertaining to the Receivership Estate and compliance with this Order. Subpoenas may be served by agents or attorneys of the Temporary Receiver and by agents of any process server retained by the Temporary Receiver;

P.  Open one or more bank accounts in the Central District of California as designated depositories for funds of the Receivership Defendants.  The Temporary Receiver shall be the sole signatory on such accounts, shall deposit all funds of the Receivership Defendants in such designated

accounts, and shall make all payments and disbursements from the receivership estate from such account(s);

Q.  Maintain accurate records of all receipts and expenditures that he makes as Temporary Receiver;

R.  Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency; and

S.  Maintain the chain of custody of all of Defendants' records in his possession, pursuant to procedures to be established in writing with the approval of the FTC.

## XV.
## TEMPORARY RECEIVER AND FTC IMMEDIATE ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that Defendants and their officers, directors, agents, servants, employees, attorneys, and all other persons or entities directly or indirectly, in whole or in part, under their control, and all other persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other entity, shall:

A.  Immediately identify to FTC's counsel, Temporary Receiver, and the Temporary Receiver's attorneys:

1.  All of Defendants' business premises;

2.  Any non-residence premises where any Defendant conducts business, sales operations, or customer service operations;

3.  Any non-residence premises where documents or electronically stored information related to the business, sales operations, or customer service operations of any Defendant are hosted, stored,

or otherwise maintained, including but not limited to the name and location of any electronic data hosts; and

4.      Any non-residence premises where assets belonging to any Defendant are stored or maintained;

B.      Allow the FTC and the Temporary Receiver, and their respective representatives, agents, attorneys, investigators, paralegals, contractors, or assistants immediate access to:

1.      All of the Defendants' business premises, including but not limited to:

a.      100 West Broadway, Suite 100, Glendale, CA 91210;

b.      11901 Santa Monica Blvd., Suite 574, West Los Angeles, CA 90025;

c.      3699 Wilshire Blvd., Suite 220, Los Angeles, CA 90010;

d.      11870 Santa Monica Blvd., Suite 540, West Los Angeles, CA 90025;

and such other business locations that are wholly or partially owned, rented, leased, or under the temporary or permanent control of any Defendant;

2.      Any other premises where the Defendants conduct business, sales operations or customer service operations;

3.      Any premises where documents related to the Defendants' businesses are stored or maintained;

4.      Any premises where assets belonging to any Defendant are stored or maintained; and

5.      Any documents located at any of the locations described in this Section, and such other locations as may become known to the Temporary Receiver; and

C.     Provide the FTC and the Temporary Receiver, and their respective representatives, agents, attorneys, investigators, paralegals, contractors, or assistants with any necessary means of access to, copying of, and forensic imaging of documents or electronically stored information, including, without limitation, the locations of Receivership Defendants' business premises, keys and combinations to business premises locks, computer access codes of all computers used to conduct Receivership Defendants' business, access to (including but not limited to execution of any documents necessary for access to and forensic imaging of) any data stored, hosted or otherwise maintained by an electronic data host, and storage area access information.

D.     The FTC and the Temporary Receiver are authorized to employ the assistance of law enforcement officers, including, but not limited to, the United States Postal Inspection Service, Internal Revenue Service, Federal Bureau of Investigation, and local police and County Sheriff's Department Officers to effect service, to implement peacefully the provisions of this Order, and to keep the peace. The Temporary Receiver shall allow the FTC and its representatives, agents, contractors, or assistants into the premises and facilities described in this Section to inspect, inventory, image, and copy documents or electronically stored information relevant to any matter contained in this Order. Counsel for the FTC and the Temporary Receiver may exclude

Defendants and their agents and employees from the business premises
and facilities during the immediate access.  No one shall interfere with
the FTC's or Temporary Receiver's inspection of the Defendants'
premises or documents.

E.   The Temporary Receiver and the FTC shall have the right to remove
any documents related to Defendants' business practices from the
premises in order that they may be inspected, inventoried, and copied.
The materials so removed shall be returned within ten (10) business
days of completing said inventory and copying.  If any property,
records, documents, or computer files relating to the Receivership
Defendants' finances or business practices are located in the residence
of any Defendant or are otherwise in the custody or control of any
Defendant, then such Defendant shall produce them to the Temporary
Receiver within twenty-four (24) hours of service of this Order.  In
order to prevent the destruction of computer data, upon service of this
Order upon Defendants, any such computers shall be powered down
(turned off) in the normal course for the operating systems used on such
computers and shall not be powered up or used again until produced for
copying and inspection, along with any codes needed for access.  The
FTC's and the Temporary Receiver's representatives may also
photograph and videotape the inside and outside of all premises to
which they are permitted access by this Order, and all documents and
other items found on such premises.

F.   The FTC's access to the Defendants' documents pursuant to this
provision shall not provide grounds for any Defendant to object to any

subsequent request for documents served by the FTC or the Temporary Receiver.

G.      The Temporary Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## XVI.

## COOPERATION WITH TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that:

A.      Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, and corporations, and all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, shall fully cooperate with and assist the Temporary Receiver. Defendants' cooperation and assistance shall include, but not be limited to:

1.      Providing any information to the Temporary Receiver that the Temporary Receiver deems necessary to exercising the authority and discharging the responsibilities of the Temporary Receiver under this Order, including but not limited to allowing the Temporary Receiver to inspect documents and assets and to partition office space;

2.      Providing any username or password and executing any documents required to access any computer or electronic files in

any medium, including, but not limited to, any data stored, hosted or otherwise maintained by an electronic data host; and

3.  Advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Temporary Receiver.

B.  Defendants and their officers, directors, agents, servants, employees, attorneys, and all other persons or entities directly or indirectly, in whole or in part, under their control, and all other persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, are hereby restrained and enjoined from directly or indirectly:

1.  Transacting any of the business of the Receivership Defendants;

2.  Destroying, secreting, erasing, mutilating, defacing, concealing, altering, transferring or otherwise disposing of, in any manner, directly or indirectly, any documents, electronically stored information, or equipment of the Receivership Defendants, including, but not limited to, contracts, agreements, consumer files, consumer lists, consumer addresses and telephone numbers, correspondence, advertisements, brochures, sales material, sales presentations, documents evidencing or referring to Defendants' services, training materials, scripts, data, computer tapes, disks, or other computerized records, books, written or printed records, handwritten notes, telephone logs, "verification" or "compliance" tapes or other audio or video tape recordings, receipt books, invoices, postal receipts, ledgers, personal and business canceled

checks and check registers, bank statements, appointment books, copies of federal, state or local business or personal income or property tax returns, photographs, mobile devices, electronic storage media, accessories, and any other documents, records or equipment of any kind that relate to the business practices or business or personal finances of the Receivership Defendants or any other entity directly or indirectly under the control of the Receivership Defendants;

3.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Temporary Receiver;

4.    Excusing debts owed to the Receivership Defendants;

5.    Failing to notify the Temporary Receiver of any asset, including accounts, of a Receivership Defendant held in any name other than the name of the Receivership Defendant, or by any person or entity other than the Receivership Defendant, or failing to provide any assistance or information requested by the Temporary Receiver in connection with obtaining possession, custody, or control of such assets;

6.    Failing to create and maintain books, records, and accounts which, in reasonable detail, accurately, fairly, and completely reflect the incomes, assets, disbursements, transactions and use of

monies by the Defendants or any other entity directly or indirectly under the control of the Defendants;

7.   Doing any act or refraining from any act whatsoever to interfere with the Temporary Receiver's taking custody, control, possession, and managing of the assets or documents subject to this Receivership; or to harass or to interfere with the Temporary Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants; or to refuse to cooperate with the Temporary Receiver or the Temporary Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court; and

8.   Filing, or causing to be filed, any petition on behalf of the Receivership Defendants for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, without prior permission from this Court.

## XVII.

## DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that immediately upon service of this Order upon them or upon their otherwise obtaining actual knowledge of this Order, or within a period permitted by the Temporary Receiver, Defendants and any other person or entity, including but not limited to financial institutions and electronic data hosts, shall transfer or deliver access to, possession, custody, and control of the following to the Temporary Receiver:

A.   All Receivership Assets;

B.     All documents and electronically stored information of the Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, records of ACH transactions, and check registers), client or customer lists, title documents and other papers;

C.     All assets belonging to members of the public now held by the Receivership Defendants;

D.     All keys, computer and other passwords, user names, entry codes, combinations to locks required to open or gain or secure access to any assets or documents of the Receivership Defendants, wherever located, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property; and

E.     Information identifying the accounts, employees, properties, or other assets or obligations of the Receivership Defendants.

F.     In the event any person or entity fails to deliver or transfer immediately any asset or otherwise fails to comply with any provision of this Section XVII, the Temporary Receiver may file *ex parte* with the Court an Affidavit of Non-Compliance regarding the failure.  Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Temporary Receiver.  The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any

county to seize the asset, document, or other thing and to deliver it to the Temporary Receiver.

## XVIII.

## COMPENSATION FOR TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that the Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by or in the possession or control of, or which may be received by, the Receivership Defendants.  The Temporary Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than ninety (90) days after the date of this Order.  The Temporary Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XIX.

## TEMPORARY RECEIVER'S REPORTS

**IT IS FURTHER ORDERED** that the Temporary Receiver shall report to this Court within ninety (90) days from the date of entry of this Order, regarding: (1) the steps taken by the Temporary Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated Receivership Assets; (3) the sum of all liabilities of the Receivership Defendants; (4) the steps the Temporary Receiver intends to take in the future to:  (a) prevent any diminution in the value of Receivership Assets, (b) pursue Receivership Assets from third parties, and (c) adjust the liabilities of the Receivership Defendants, if appropriate; (5) the Temporary

Receiver's assessment of whether the business can be operated in compliance with this Order; and (6) any other matters which the Temporary Receiver believes should be brought to the Court's attention.  *Provided, however*, if any of the required information would hinder the Temporary Receiver's ability to pursue Receivership Assets, the portions of the Temporary Receiver's report containing such information may be filed under seal and not served on the parties.

## XX.

### WITHDRAWAL OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that the Temporary Receiver and any Professional retained by the Temporary Receiver, including, but not limited to, his or her attorneys and accountants, be and are hereby authorized to withdraw from his or her respective appointments or representations and apply for payment of their professional fees and costs at any time after the date of this Order, for any reason in their sole and absolute discretion, by sending written notice seven (7) days prior to the date of the intended withdrawal to the Court and to the parties along with a written report reflecting the Temporary Receiver's work, findings, and recommendations, as well as an accounting for all funds and assets in possession or control of the Temporary Receiver.  The Temporary Receiver and Professionals shall be relieved of all liabilities and responsibilities, and the Temporary Receiver shall be exonerated and the receivership deemed closed seven (7) days from the date of the mailing of such notice of withdrawal.  The Court will retain jurisdiction to consider the fee applications, report, and accounting submitted by the Temporary Receiver and the Professionals.  The written notice shall include an interim report indicating the Temporary Receiver's actions and reflect the knowledge gained along with the

fee applications of the Temporary Receiver and his or her Professionals.  The report shall also contain the Temporary Receiver's recommendations, if any.

## XXI.

## TEMPORARY RECEIVER'S BOND/LIABILITY

**IT IS FURTHER ORDERED** that no bond shall be required in connection with the appointment of the Temporary Receiver.  Except for an act of gross negligence, the Temporary Receiver and the Professionals shall not be liable for any loss or damage incurred by any of the Defendants, their officers, agents, servants, employees, and attorneys or any other person, by reason of any act performed or omitted to be performed by the Temporary Receiver and the Professionals in connection with the discharge of his or her duties and responsibilities, including but not limited to their withdrawal from the case under Section XX.

## XXII.

## PROHIBITION ON RELEASE OF CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that, except as required by a law enforcement agency, law, regulation or court order, Defendants, and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, are restrained and enjoined from disclosing, using, or benefitting from consumer information, including the name, address, telephone number, email address, Social Security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account), of any person which any Defendant obtained prior to entry of this Order in connection with any mortgage assistance relief product or service.

# XXIII.

## STAY OF ACTIONS

**IT IS FURTHER ORDERED** that:

A.      Except by leave of this Court, during pendency of the Receivership ordered herein, Defendants and all other persons and entities be and hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, the Receivership Defendants, any of their subsidiaries, affiliates, partnerships, assets, documents, or the Temporary Receiver or the Temporary Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

1.      Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2.      Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate any interest in any asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3.      Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

4.      Doing any act or thing whatsoever to interfere with the Temporary Receiver taking custody, control, possession, or management of the assets or documents subject to this Receivership, or to harass or interfere with the Temporary Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants;

B.   This Section XXIII does not stay:

1.      The commencement or continuation of a criminal action or proceeding;

2.      The commencement or continuation of an action or proceeding by the State Bar of California to enforce its police or regulatory power;

3.      The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

4.      The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

5.      The issuance to a Receivership Defendant of a notice of tax deficiency; and

C.   Except as otherwise provided in this Order, all persons and entities in need of documentation from the Temporary Receiver shall in all instances first attempt to secure such information by submitting a formal written request to the Temporary Receiver, and, if such request has not

been responded to within thirty (30) days of receipt by the Temporary Receiver, any such person or entity may thereafter seek an Order of this Court with regard to the relief requested.

## XXIV.

## LIMITED EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that the FTC is granted leave to conduct certain expedited discovery, and that, commencing with the time and date of this Order, in lieu of the time periods, notice provisions, and other requirements of Rules 26, 30, 34, and 45 of the Federal Rules of Civil Procedure, and applicable Local Rules, the FTC is granted leave to:

A.      Take the deposition, on three (3) days' notice, of any person or entity, whether or not a party, for the purpose of discovering: (1) the nature, location, status, and extent of assets of Defendants or their affiliates or subsidiaries; (2) the nature and location of documents and business records of Defendants or their affiliates or subsidiaries; and (3) compliance with this Order.  The limitations and conditions set forth in Fed. R. Civ. P. 30(a)(2)(B) and 31(a)(2)(B) regarding subsequent depositions shall not apply to depositions taken pursuant to this Section. In addition, any such depositions taken pursuant to this Section shall not be counted toward the ten deposition limit set forth in Fed. R. Civ. P. 30(a)(2)(A)(i) and 31(a)(2)(A)(i) and shall not preclude the FTC from subsequently deposing the same person or entity in accordance with the Federal Rules of Civil Procedure.  Service of discovery upon a party, taken pursuant to this Section, shall be sufficient if made by facsimile, email or by overnight delivery.  Any deposition taken pursuant to this

sub-section that has not been reviewed and signed by the deponent may be used by any party for purposes of the preliminary injunction hearing;

B.  Serve upon parties requests for production of documents or inspection that require production or inspection within three (3) calendar days of service, and may serve subpoenas upon non-parties that direct production or inspection within five (5) calendar days of service, for the purpose of discovering:  (1) the nature, location, status, and extent of assets of Defendants or their affiliates or subsidiaries; (2) the nature and location of documents and business records of Defendants or their affiliates or subsidiaries; and (3) compliance with this Order, *provided that* twenty-four (24) hours' notice shall be deemed sufficient for the production of any such documents that are maintained or stored only as electronic data;

C.  Serve deposition notices and other discovery requests upon the parties to this action by facsimile or overnight courier, and take depositions by telephone or other remote electronic means; and

D.  If a Defendant fails to appear for a properly noticed deposition or fails to comply with a request for production or inspection, seek to prohibit that Defendant from introducing evidence at any subsequent hearing.

## XXV.

## MONITORING

**IT IS FURTHER ORDERED** that agents or representatives of the FTC may contact Defendants directly or anonymously for the purpose of monitoring compliance with this Order, and may tape record any oral communications that occur in the course of such contacts.

## XXVI.

## DEFENDANTS' DUTY TO DISTRIBUTE ORDER

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, client company, electronic data host, agent, attorney, spouse, and representative of Defendants and shall, within three (3) calendar days from the date of entry of this Order, provide counsel for the FTC with a sworn statement that:  (a) confirms that Defendants have provided copies of the Order as required by this Section and (b) lists the names and addresses of each entity or person to whom Defendants provided a copy of the Order. Furthermore, Defendants shall not take any action that would encourage officers, agents, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns, or other persons or entities in active concert or participation with Defendants to disregard this Order or believe that they are not bound by its provisions.

## XXVII.

## CORRESPONDENCE WITH PLAINTIFF

IT IS FURTHER ORDERED that, for the purposes of this Order, because mail addressed to the FTC is subject to delay due to heightened security screening, all

correspondence and service of pleadings on Plaintiff shall be sent either via electronic submission or via Federal Express to:

Miry Kim
Federal Trade Commission
915 Second Ave., Suite 2896
Seattle, WA 98174
Mkim@ftc.gov

with a copy to:

Raymond E. McKown
Federal Trade Commission
10877 Wilshire Blvd., Suite 700
Los Angeles, CA 90024
rmckown@ftc.gov

## XXVIII.
## SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by facsimile transmission, email, personal or overnight delivery, or U.S. Mail, by agents and employees of the FTC or any state or federal law enforcement agency or by private process server, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of any Defendant, or that may otherwise be subject to any provision of this Order.  Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

## XXIX.
## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes of construction, modification, and enforcement of this Order.

## XXX.
## IMMEDIATE RETURN OF FUNDS TO RECEIVER

**IT IS ALSO ORDERED** that Defendant Zimmerman shall turn over to the Receiver any and all funds withdrawn after Defendant received notice of the Temporary Restraining Order issued in this action.  Defendant shall turn over any such funds within twenty-four (24) hours of service of this Order.

Defendant is advised that willful violation of a court order may constitute contempt of court, the penalties for which may include imprisonment among other consequences.

**IT IS SO ORDERED**, this 7th day of June, 2012, at 11:45 a.m., Pacific Standard Time.

Dated: June 7, 2012

Dean D. Pregerson
UNITED STATES DISTRICT JUDGE